# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

BERNADINE MORIMOTO, as personal representative of the Estate of Abygaile B.; EMBER B., and KARRIAH M.,

Plaintiffs,

v.

RICHARD WHITLEY, et al.,

Defendants.

Case No. 2:17-cv-01774-APG-GWF

**ORDER GRANTING MOTION TO DISMISS**

(ECF No. 14)

Plaintiff Bernadine Morimoto, as personal representative of the Estate of Abygaile B., and on behalf of Abygaile's minor sisters, Ember B. and Karriah M., brought this lawsuit after Abygaile's father beat her to death. Generally, the plaintiffs allege that state and local officials failed to protect Abygaile after reports about her father's abuse were made to Clark County's Division of Family Services (Clark County DFS). Defendants Richard Whitley, Director of the Nevada Department of Health and Human Services (DHHS), and Kelly Woolridge, Administrator of the Nevada Division of Child and Family Services (NDCFS), move to dismiss the claims against them. The plaintiffs have not shown that a special relationship was created between Abygaile and the state. Nor have they shown that the state created the danger that ultimately took Abygaile's life. Therefore, I grant the motion to dismiss.

**I. BACKGROUND**

On January 8, 2016, police responded to a report of domestic violence and abuse of minors. ECF No. 1 at 6, 12. Officers were shown a video of the girls' father, defendant Justin Bennett, physically abusing them. *Id.* at 12. The police contacted Clark County DFS to report the abuse. *Id.* Clark County DFS screened the report and referred it to a private contractor, defendant Hopelink of Southern Nevada, for investigation. *Id.* at 6, 12. Hopelink assigned its employee, defendant James Hardee, to investigate. *Id.* at 6, 12. Hopelink and Hardee lack authority to

remove children from an abusive environment and instead must report the abuse to Clark County DFS. *Id.* at 11.

Hardee visited Bennett to discuss parenting classes and to establish a case plan. *Id.* at 12. He also visited Bernadine Morimoto, the girls' maternal grandmother, at which time he saw signs of physical abuse on the children. *Id.* Hardee thereafter made several unannounced visits to Bennett's home, but was unable to make contact with Bennett. *Id.* at 12-13. Morimoto later called Hardee to express her concern that her grandchildren were at risk of harm from Bennett. *Id.* at 13.

On March 16, Hardee met with Clark County DFS officials to discuss the case. *Id.* Hardee expressed concern for the children's safety if they remained in Bennett's care, but Clark County DFS declined to take over the case. *Id.*

A few days later, Hardee made an unannounced visit to Bennett's home and made contact with Bennett. *Id.* at 13-14. However, Hardee was not able to see two of the children, who were in bed under the covers even though it was daytime. *Id.* at 14. About two weeks later, Hardee and Hopelink closed the case despite Bennett not completing the parenting classes, Bennett avoiding contact with Hardee, and Morimoto and Hardee voicing concerns about the children's safety. *Id.*

On July 1, 2016, Bennett beat Abygaile to death. *Id.* In addition to the injuries causing her death, Abygaile had many injuries in various stages of healing. *Id.*

The plaintiffs bring this lawsuit against Bennett and his mother (who allegedly lived in the house, saw the abuse, and did nothing), various state and local entities and officials, Hopelink, and Hardee. As is relevant to this motion, the plaintiffs allege the DHHS and its subdivision, the NDCFS, have the duty to administer Nevada's Medicaid and Children's Health Insurance Program, and to monitor the performance of any agency that provides child welfare services, such as Clark County DFS. *Id.* at 3. The plaintiffs allege Whitley, as head of DHHS, and Woolridge, as head of NDCFS, failed in their duties to monitor Clark County DFS despite knowing about several incidents where children have died while under Clark County DFS's care. *Id.* at 7-11. Based on these allegations, the plaintiffs assert claims against Whitley and Woolridge under 42

U.S.C. § 1983 for violations of Abygaile's substantive due process rights based on an alleged special relationship implicating a duty to protect her (count one) and the state-created danger doctrine (count three). The plaintiffs assert a state law civil rights claim against Whitley and Woolridge under the same theories (count five), and state law claims for negligence (count ten) and wrongful death (count nineteen). Whitley and Woolridge move to dismiss the claims against them. I grant the motion.

**II. ANALYSIS**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

**A. Section 1983 Substantive Due Process**

Whitley and Woolridge argue that the failure to protect Abygaile from her father cannot amount to a substantive due process violation under the Fourteenth Amendment unless either there was a special relationship between Abygaile and the state or the state created the danger. They contend count one does not allege any factual allegations establishing a special relationship because there is no allegation Abygaile was taken into custody or placed in foster care. They contend count three does not allege they created a danger to which Abygaile was not already exposed. Alternatively, Whitley and Woolridge assert they are entitled to qualified immunity because no clearly established law would put them on notice that their failure to correct issues in the child welfare system would violate any particular child's substantive due process rights.

1 The plaintiffs respond that the minor children had a liberty interest in being protected from harm, and once a case was opened regarding the potential abuse, Whitley and Woolridge had a responsibility to ensure the children's safety. As for the state created danger doctrine, the plaintiffs argue Whitley and Woolridge were responsible for overseeing child welfare services in Clark County, they failed to do so properly despite knowing about systemic failures, and their failure to take any corrective action in the face of that knowledge amounts to deliberate indifference to the plaintiffs' substantive due process rights, thus creating a danger. As for qualified immunity, the plaintiffs argue that Whitley and Woolridge were aware that the children were at risk of harm due to the numerous deficiencies in the child welfare system that these defendants failed to correct.

To state a § 1983 claim, a plaintiff must allege that "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011). The defendants do not dispute they acted under color of state law. The question is whether the complaint adequately alleges the defendants deprived the plaintiffs of a constitutional right.

The due process clause "generally does not confer any affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests," nor does it "impose a duty on [the state] to protect individuals from third parties." *Id.* (quotation omitted); *see also DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (stating the due process clause's "purpose was to protect the people from the State, not to ensure that the State protected them from each other"). Thus, generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney*, 489 U.S. at 197.

This general rule is subject to two exceptions. A state's "omission or failure to act may give rise to a § 1983 claim" when either (1) "a special relationship exists between the plaintiff and the state (the special-relationship exception)" or (2) "the state affirmatively places the plaintiff in

danger by acting with deliberate indifference to a known or obvious danger (the state-created danger exception)." *Patel*, 648 F.3d at 971-72 (quotation omitted).

### 1. Special Relationship (count one)

The special-relationship exception is based on the principle that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200. The complaint does not allege any facts supporting a special relationship. There is no allegation the minor children were taken into custody.

The plaintiffs contend that the governmental response to a report of abuse suffices, but *DeShaney* specifically rejected that argument. There, the government officials had received multiple reports of child abuse, opened an investigation, and placed the child in temporary custody. *DeShaney*, 489 U.S. at 192. The child was returned to the home and his father later beat him so severely he fell into a coma and suffered permanent brain injury. *Id.* at 192-93. Like the plaintiffs in this case, the plaintiffs in *DeShaney* argued that "[h]aving actually undertaken to protect" the child from abuse at the hands of his father, the state had a duty to do so in "reasonably competent fashion." *Id.* at 197. The Supreme Court disagreed, instead requiring some form of custodial relationship before the substantive due process clause is implicated.[1] *Id.* at 198-202. Because there are no allegations of a special relationship, I dismiss count one.

### 2. State-Created Danger (count three)

"The state-created danger exception creates the potential for § 1983 liability where a state actor 'creates or exposes an individual to a danger which he or she would not have otherwise faced.'" *Campbell v. State of Wash. Dep't of Soc. & Health Servs.*, 671 F.3d 837, 845 (9th Cir. 2011) (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006)). To fall within this exception, there must be "affirmative conduct on the part of the state in placing the

---

[1] The plaintiffs' reliance on *Henry A. v. Willden*, 678 F.3d 991 (9th Cir. 2012) and *Tamas v. Department of Social and Health Services*, 630 F.3d 833 (9th Cir. 2010) is misplaced. In both of those cases, the children were in foster care and thus were in state custody. *Henry A.*, 678 F.3d at 1000; *Tamas*, 630 F.3d at 844.

plaintiff in danger" and the state must act "with deliberate indifference to a known or obvious danger." *Patel*, 648 F.3d at 974 (quotations omitted). To determine whether the state-created danger exception applies, I consider: "(1) whether any affirmative actions of the official placed the individual in danger he otherwise would not have faced; (2) whether the danger was known or obvious; and (3) whether the officer acted with deliberate indifference to that danger." *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir. 2012).

The complaint does not allege facts supporting this theory of liability. Whitley and Woolridge did not expose the plaintiffs to a danger they would not have otherwise faced. *DeShaney* is directly on point. There, the Supreme Court reasoned that "the harms [the child] suffered occurred not while he was in the State's custody, but while he was in the custody of his natural father, who was in no sense a state actor. While the State may have been aware of the dangers that [the child] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *DeShaney*, 489 U.S. at 201. Indeed, the facts in *DeShaney* were stronger for imposing a state-created danger than those that exist here because in that case, the State once took temporary custody of the abused child. *Id.* But that "does not alter the analysis, for when [the State] returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." *Id.* As in *DeShaney*, Whitley and Woolridge "had no constitutional duty to protect" the plaintiffs and the alleged failure to protect them from their father "simply does not constitute a violation of the Due Process Clause." *Id.* at 202. I therefore dismiss count three.

**B. State Law Civil Rights (count five)**

The parties agree that Nevada's substantive due process clause is coextensive with the federal clause. ECF Nos. 14 at 10; 18 at 13. I therefore dismiss count five for the same reasons I dismiss counts one and three.

////

////

### C. State Law Negligence and Wrongful Death (counts ten and nineteen)

Whitley and Woolridge contend these claims must be dismissed because they have no duty to protect others from criminal attack by a third person. The plaintiffs respond that the defendants are not entitled to discretionary immunity. However, the defendants did not move on the basis of discretionary immunity. Rather, they contend they had no duty to protect the children from their father's violence.

Under Nevada law, a negligence claim requires a plaintiff to allege: "(1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages." *Scialabba v. Brandise Constr. Co.*, 921 P.2d 928, 930 (Nev. 1996); *see also* Nev. Rev. Stat. § 41.085 (creating wrongful death cause of action when death is "caused by the wrongful act or neglect of another"). "Whether a defendant owes a plaintiff a duty of care is a question of law." *Scialabba*, 921 P.2d at 930.

Generally, "a private person does not have a duty to protect another from a criminal attack by a third person." *Id.* "However, courts have imposed liability where a 'special relationship' exists between the parties, including landowner-invitee, businessman-patron, employer-employee, school district-pupil, hospital-patient, and carrier-passenger." *Id.* The rationale behind the imposition of liability under these circumstances is similar to the special-relationship concept in federal substantive due process law:

> Since the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of the other, a duty should be imposed upon the one possessing control (and thus the power to act) to take reasonable precautions to protect the other one from assaults by third parties which, at least, could reasonably have been anticipated.

*Id.* (alteration and quotation omitted). "Thus, the element of control is the pivotal factor in the determination of liability arising from certain relationships." *Id.*

The complaint does not allege a special relationship that would impose a duty on Whitley and Woolridge to protect the plaintiffs' from their father's criminal attack. Consequently, I dismiss the negligence and wrongful death claims.

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendants Richard Whitley and Kelly Woolridge's motion to dismiss **(ECF No. 14) is GRANTED**. All of the plaintiffs' claims against these defendants are dismissed without prejudice. However, because it may be possible for the plaintiffs to assert valid claims against these defendants, I will grant them leave to file an amended complaint. If sufficient facts exist to correct the deficiencies pointed out above, the plaintiffs may file an amended complaint within 21 days of entry of this order.

DATED this 19th day of March, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE