UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BERNADINE MORIMOTO, as personal representative of the Estate of Abygaile B.; EMBER B., and KARRIAH M., <br><br> Plaintiffs, <br><br> v. <br><br> RICHARD WHITLEY, et al., <br><br> Defendants. | Case No. 2:17-cv-01774-APG-GWF <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> (ECF No. 48) |

Plaintiff Bernadine Morimoto, as personal representative of the Estate of Abygaile B., and on behalf of Abygaile's minor sisters, Ember B. and Karriah M., brought this lawsuit after Abygaile's father beat Abygaile to death. Generally, the plaintiffs allege that state and local officials failed to protect Abygaile after reports about her father's abuse were made to Clark County's Division of Family Services (DFS). Defendants Clark County, Donald Burnette (county manager), and Timothy Burch (former director of DFS) move to dismiss the claims against them.

The parties are familiar with the allegations, and I set forth the facts in a prior order. ECF No. 43. I will not repeat them here except where necessary. I grant the county defendants' motion to dismiss the federal claims because the complaint does not allege plausible substantive due process violations. I am inclined to decline supplemental jurisdiction over the state law claims because they raise important and novel state law issues that ought to be resolved by the Nevada courts. However, I will stay the dismissal of these claims for 30 days to allow the plaintiffs time to move to amend the complaint to add at least one viable federal claim. If the plaintiffs do not file a motion to amend, or if I deny the motion such that no federal claim remains

in the case, then I will decline supplemental jurisdiction and dismiss the state law claims without prejudice, so they may be pursued in state court.

**I. ANALYSIS**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

**A. Procedural Challenge**

The plaintiffs contend that because the county defendants already filed an answer, they cannot file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The defendants reply that they included the affirmative defense of failure to state a claim in their answers, so they can move to dismiss on this basis. The defendants also argue it would waste time and resources to continue with the case based on a procedural technicality.

In addressing the timing of defenses, Rule 12(b) states, "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." However, this court has allowed post-answer motions when the applicable defense was included in the answer. *See Bank of Am. N.A. v. Regency Vill. Owner's Ass'n, Inc.*, No. 2:16-cv-00496-GMN-CWH, 2017 WL 2817882, at *3 n.1 (D. Nev. June 29, 2017) (finding that the defendant "asserted the defense that BANA failed to state a claim in its Answer . . . and thus, did not waive that defense by filing its Answer before filing the Motion to Dismiss."). In their answers, the county defendants asserted as an affirmative defense that the complaint fails to state a claim. ECF Nos. 12 at 10; 21 at 11. Additionally, I could treat the motion as one for judgment on the pleadings under Rule

12(c). Rule 12(c) motions are "functionally identical" to Rule 12(b)(6) motions, so it would not change the analysis. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Accordingly, I do not deny the motion to dismiss on procedural grounds.

**B. Section 1983 Substantive Due Process**

The county defendants argue that the failure to protect Abygaile from her father cannot amount to a substantive due process violation under the Fourteenth Amendment unless either there was a special relationship between Abygaile and the state or the state created the danger. They contend count two does not allege facts establishing a special relationship because there is no allegation Abygaile was taken into custody or placed in foster care. They contend count four does not allege they created a danger to which Abygaile was not already exposed. The plaintiffs respond with a variety of arguments as to why they have adequately alleged both a special relationship and state-created danger.

To state a § 1983 claim, a plaintiff must allege that "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011). The county defendants do not dispute they acted under color of state law. The question is whether the complaint adequately alleges the county defendants deprived the plaintiffs of a constitutional right.

The due process clause "generally does not confer any affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests," nor does it "impose a duty on [the state] to protect individuals from third parties." *Id.* (quotation omitted); *see also DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (stating the due process clause's "purpose was to protect the people from the State, not to ensure that the State protected them from each other"). Thus, generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney*, 489 U.S. at 197.

This general rule is subject to two exceptions. A state's "omission or failure to act may give rise to a § 1983 claim" when either (1) "a special relationship exists between the plaintiff and the state (the special-relationship exception)" or (2) "the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger (the state-created danger exception)." *Patel*, 648 F.3d at 971-72 (quotation omitted).

### 1. Special Relationship (count two)

The special relationship exception is based on the principle that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200. The complaint does not allege any facts plausibly supporting a special relationship. There is no allegation the minor children were taken into custody, removed from the home, or placed in foster care.

The plaintiffs nevertheless argue that the county defendants had "constructive custody" of the children via their power to remove the children from the father's home and through their control of the decision to delegate the matter to Hopelink of Southern Nevada (Hopelink). The plaintiffs also contend the county's decision to refer the matter to Hopelink created a special relationship because the plaintiffs believed the county would act to protect them but instead the county referred the matter to a contractor who lacked the ability to remove the children from the home. Finally, the plaintiffs argue the minor children had no ability to act on their own behalf and the county defendants instructed Hopelink employee James Hardee (Hardee) to tell the children's grandmother, Bernadine, that she had to return the children to the abusive father.

There is no authority to support the plaintiffs' argument that the county defendants' power to remove the children created "constructive custody" over them sufficient to support a special relationship. In *DeShaney*, the government temporarily removed the child from the father's care and returned him to the abusive father. Yet the Supreme Court found no special relationship. *DeShaney*, 489 U.S. at 201. That is because the "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him,

but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200. Because the county defendants never took custody of the children, they imposed no limitations on their freedom to act, so there was no special relationship under the facts alleged in the complaint.

For the same reasons, the referral to Hopelink did not create a special relationship. The plaintiffs cite no authority for the proposition that a plaintiff's unilateral belief that a governmental agency is responding to an abuse complaint creates a special relationship. If that were so, the Supreme Court would have resolved *DeShaney* differently because there the defendants responded to the abuse complaints and actually took temporary custody of the child.

Finally, the plaintiffs argue in their opposition that the county defendants directed Hardee to inform Bernadine that she had to return the children to the abusive father, and thus a special relationship was created by Hardee's command regarding custody.[1] This allegation is not in the complaint.[2] When considering a motion to dismiss for failure to state a claim, I may not consider facts contained in a response brief that are not also in the complaint. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). Accordingly, this does not save the complaint from dismissal. Because the complaint does not plausibly allege a special relationship, I grant the motion to dismiss count two.

### 2. State-Created Danger (count four)

"The state-created danger exception creates the potential for § 1983 liability where a state actor 'creates or exposes an individual to a danger which he or she would not have otherwise faced.'" *Campbell v. State of Wash. Dep't of Soc. & Health Servs.*, 671 F.3d 837, 845 (9th Cir. 2011) (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006)). To fall within this exception, there must be "affirmative conduct on the part of the state in placing the

---

[1] The plaintiffs do not identify which county employee allegedly told Hardee to give this direction to Bernadine or a general time frame for when that happened.

[2] Even if this allegation is added to the complaint, it does not appear, on its face, to support claims of either a special relationship or state-created danger. Merely advising Bernadine that she must comply with the current legal custody status is not an exercise of the county's power to impact or change the children's custody. If the plaintiffs intend to move to amend to add this allegation, they must explain in the motion why it is not futile.

plaintiff in danger" and the state must act "with deliberate indifference to a known or obvious danger." *Patel*, 648 F.3d at 974 (quotations omitted). To determine whether the state-created danger exception applies, I consider: "(1) whether any affirmative actions of the official placed the individual in danger he otherwise would not have faced; (2) whether the danger was known or obvious; and (3) whether the officer acted with deliberate indifference to that danger." *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir. 2012).

The complaint does not allege facts supporting this theory of liability. The county defendants did not expose the plaintiffs to a danger they would not have otherwise faced. *DeShaney* is directly on point. There, the Supreme Court reasoned that "the harms [the child] suffered occurred not while he was in the State's custody, but while he was in the custody of his natural father, who was in no sense a state actor. While the State may have been aware of the dangers that [the child] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *DeShaney*, 489 U.S. at 201. Indeed, the facts in *DeShaney* were stronger for finding a state-created danger than exist here because in that case, the State once took temporary custody of the abused child. *Id.* But that "does not alter the analysis, for when [the State] returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." *Id.* As in *DeShaney*, the county defendants "had no constitutional duty to protect" the plaintiffs and the alleged failure to protect them from their father "simply does not constitute a violation of the Due Process Clause." *Id.* at 202.

As discussed above, there is no support in the law for a theory of constructive custody merely because the county defendants had the power to take the children into custody. Likewise, there is no allegation in the complaint that the county defendants instructed Hardee to tell Bernadine to return the children to the abusive father. Consequently, neither of those arguments can support finding a state-created danger under the facts alleged in the complaint.

The decision to assign this matter to Hopelink did not create the danger the children faced from their father nor increase their vulnerability to it. The argument that it did relies on a theory that the county defendants had a duty to protect the children from their father's violence and failed to do so by assigning the matter to Hopelink. But under *DeShaney*, there is no substantive due process right to government protection from a third party's violence. That leaves the plaintiffs' arguments that (1) the plaintiffs have a substantive due process right arising from a mandatory duty for the county defendants to investigate reports of child abuse and (2) the county defendants created the danger by cutting off private sources of aid to the children.

### a. Mandatory Duty to Investigate

Upon receiving a report of abuse, DFS must initiate an immediate investigation if there is a fatality, a high risk of serious harm, the child is living in a household in which another child has died, or the child is seriously injured or has visible signs of physical abuse. Nev. Rev. Stat. § 432B.260(2). Otherwise, when DFS receives a report of possible abuse, it must determine within three days whether an investigation is warranted. *Id.* § 432B.260(3). DFS may determine an investigation is not warranted if the child is not in imminent danger, is not vulnerable as a result of some injury or illness that threatens the child's safety, or if DFS determines the abuse was the result of reasonable discipline and corporal punishment was not so excessive as to constitute abuse. *Id.*

If an investigation is required or DFS decides after an evaluation that one is needed, DFS must make certain determinations, including who makes up the household, whether there is reasonable cause to believe there is abuse or neglect, the risk to the child, treatment and services that are necessary, and whether the report of abuse is substantiated. *Id.* § 432B.300. The results of an investigation must be reported to a Central Registry. *Id.* § 432B.310. If DFS determines an investigation is not needed, it may provide counseling or assess the family to determine appropriate services, and it may refer the family to a county contractor to perform that assessment. *Id.* § 432B.260(6).

Nothing in Nevada's child welfare statutes requires the DFS to take any particular action as to the child's living arrangements upon investigation, at least under the facts alleged here. For example, if DFS determines a child needs protection but is not in imminent danger, it can offer services, or it can file a petition to adjudicate the child as needing protection and request the child be removed from the home or for the child to remain at home with or without supervision. *Id.* § 432B.340. It "may" refer the case for criminal prosecution. *Id.* § 432B.380. Even where DFS believes the child is in imminent danger, the statutes state that DFS "[m]ay," not shall, place a child in protective custody. *Id.* § 432B.390(1)(a). DFS is statutorily required to place a child in protective custody only when one parent kills the other in a domestic violence incident or when a parent abandons a newborn to a medical care provider. *Id.* §§ 432B.390(1)(b), (2); 432B.630.

The complaint alleges that when the police were called in January 2016, the children had visible injuries and Hardee later saw bruises on the children and watched a video of the father abusing the children. ECF No. 1 at 12. Viewing the facts in the complaint in the light most favorable to the plaintiffs, an investigation was mandatory under § 432B.260(2) because Hardee saw visible signs of physical abuse. But no investigation was conducted and instead the matter was referred to a services provider under § 432B.260(6). However, the plaintiffs do not explain the constitutional significance of the county defendants' failure to conduct an investigation.

The plaintiffs have not alleged or argued they had a liberty interest in being removed from their father's home that arises directly under the U.S. Constitution.[3] Instead, it appears the

---

[3] "The Due Process Clause of the Fourteenth Amendment includes a substantive component that protects certain individual liberties from state interference." *Franceschi v. Yee*, 887 F.3d 927, 937 (9th Cir. 2018) (quotation omitted). "The range of liberty interests that substantive due process protects is narrow and [o]nly those aspects of liberty that we as a society traditionally have protected as fundamental are included within the substantive protection of the Due Process Clause." *Id.* (quotation omitted). The doctrine has been "largely confined to protecting fundamental liberty interests, such as marriage, procreation, contraception, family relationships, child rearing, education and a person's bodily integrity, which are deeply rooted in this Nation's history and tradition." *Id.* (quotation omitted). The clause is directed at being free from state interference, not an interest in having the state interfere on an individual's behalf. Moreover, the right of parents to maintain familial relationships with their children is deeply rooted. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (stating parents have a "fundamental liberty interest . . . in the care, custody, and management of their child").

plaintiffs are asserting that Nevada's child welfare statutes create a constitutionally protected liberty or property interest. *DeShaney* did not address whether the state's "child protection statutes gave [the child] an 'entitlement' to receive protective services in accordance with the terms of the statute, an entitlement which would enjoy due process protection against state deprivation" because the plaintiffs in that case did not timely raise the issue. 489 U.S. at 195 n.2.

Whether state law gives rise to a protected liberty or property interest for purposes of the federal constitution is a question of federal law. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756-57 (2005). Deciding the federal issue requires determining "what it is that state law provides." *Id.* at 757. State law may create a protected liberty or property interest "by establishing substantive predicates to govern official decision-making, . . . and . . . by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) (quotation and internal citation omitted). If the state decisionmaker has discretion, there is no constitutionally protected interest. *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Town of Castle Rock, Colo.*, 545 U.S. at 756 (stating a plaintiff does not have a constitutionally protected interest in a benefit "if government officials may grant or deny it in their discretion"). Even if a state statute creates an entitlement, the court still must determine whether that constitutes a liberty or property interest for purposes of the due process clause in the U.S. Constitution. *Town of Castle Rock, Colo.*, 545 U.S. at 766.

The plaintiffs have not shown, and have not attempted to show, that the Nevada statutes create a legally protected right to removal from an abusive parent's custody. The statutes give

---

"Federal courts have always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open ended." *Brittain v. Hansen*, 451 F.3d 982, 990 (9th Cir. 2006) (quotation omitted). Courts "must therefore exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of [federal judges]." *Id.* (quotation omitted). The substantive due process clause "is not a font of tort law to be superimposed upon whatever systems may already be administered by the States . . . ." *Id.* (quotation omitted).

The parties have not raised and argued the issue, so I do not address it further. But if the plaintiffs intend to assert such a right in an amended complaint, they must make it clear they are doing so and address in the motion to amend why such a claim would not be futile.

discretion, stating DFS "may" remove the child from the home. The plaintiffs have not shown how, given this discretion, they had a constitutionally protected interest in being removed from their father's home.

Assuming without deciding that § 432B.260(2) creates an entitlement to an investigation when there are visible signs of physical abuse, the plaintiffs have not explained how a right to an investigation under state law amounts to a protected property or liberty interest under the U.S. Constitution. *See Town of Castle Rock, Colo.*, 545 U.S. at 766-67 (rejecting a claim that Colorado domestic violence statutes, even if they created an entitlement under state law, created a constitutionally protected property interest in police enforcement of a restraining order). I therefore dismiss count four to the extent it is premised on a mandatory duty to investigate. If the plaintiffs move to amend with respect to this theory, they must explain why such a claim would not be futile.

### b. Cutting Off Sources of Aid

At least one court has held that under the state-created danger doctrine, when a state cuts off sources of private aid, it must provide replacement aid. *See Ross v. United States*, 910 F.2d 1422 (7th Cir. 1990). However, the plaintiff still must show the governmental actors engaged in an affirmative act that placed the plaintiff "in a more dangerous position than the one in which they found him." *Estate of Amos ex rel. Amos v. City of Page, Arizona*, 257 F.3d 1086, 1092 (9th Cir. 2001) (quotation omitted).

There are no allegations in the complaint that the county defendants engaged in acts that cut off other sources of aid that placed the children in a more dangerous position. There are no allegations that the county defendants prevented the children, Bernadine, or the mother from reaching out to other sources of aid, such as calling the police (which the complaint alleges they did once before), seeking a protective order, or seeking to terminate the father's custodial or parental rights. Absent allegations that the county defendants (or Hardee at the county defendants' direction) increased the danger through affirmative acts that cut off other sources of aid, this is not a viable theory of a state-created danger.

The complaint as currently pleaded does not plausibly allege a state-created danger. I therefore dismiss count four.

### 3. Violation of Familial Relationships and Municipal Liability

Plaintiffs' § 1983 claims for deprivation of familial relationships (count seven) and for municipal liability (count eight) rely on the existence of a plausible substantive due process violation. I therefore dismiss these claims as well.

### C. State Law Claims

Under 28 U.S.C. § 1367(c)(3), I may decline to exercise supplemental jurisdiction over pendent state law claims if I have dismissed all claims over which I have original jurisdiction. Whether to exercise supplemental jurisdiction is a discretionary decision that is "informed by the . . . values of economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quotation omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quotation omitted).

The factors favor declining jurisdiction here. All of the remaining claims could and should be resolved in state court. This case has not progressed beyond the pleading stage. Comity concerns heavily favor allowing the state courts to resolve the important and novel state law issues the plaintiffs allege. There is no unfairness in dismissal. Under § 1367(d), the statute of limitations for supplemental claims is "tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." Thus, the plaintiffs' claims will not be time-barred if I decline to exercise supplemental jurisdiction. I therefore will decline to exercise supplemental jurisdiction over the state law claims if the plaintiffs either forego amendment or if I deny the motion to amend such that no viable federal claim remains in the case.

### D. Amendment

At the hearing on this motion, the plaintiffs requested leave to amend if necessary. I will stay dismissal of this case for 30 days and grant the plaintiffs leave to file a motion to amend. If

the plaintiffs move to amend, they must address both Rule 16's stringent good cause standard for allowing an amendment of a pleading after the scheduling order's deadline and the Rule 15 factors, including an explanation supported by case law as to why the amended claims are not futile. If the plaintiffs choose not to amend, I will decline to exercise supplemental jurisdiction over the state law claims and will dismiss them without prejudice so the plaintiffs may pursue them in state court.

## II. CONCLUSION

IT IS THEREFORE ORDERED that defendants Clark County, Donald Burnette, and Timothy Burch's motion to dismiss **(ECF No. 48) is GRANTED**.

IT IS FURTHER ORDERED that dismissal is stayed for 30 days from the date of this order.

IT IS FURTHER ORDERED that the plaintiffs may file a motion to amend within 30 days of the date of this order.

IT IS FURTHER ORDERED that if the plaintiffs do not file a motion to amend within 30 days, or if the plaintiffs notify the court they do not intend to move to amend, then I will decline to exercise supplemental jurisdiction over the state law claims and will dismiss them without prejudice.

DATED this 30th day of October, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE